IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 4:24cr78 |
| ) | |
| CHRISTOPHER ALEXANDER INGRAM, ) | |
| ) | |
| Defendant. ) | |

**MOTION TO DISMISS COUNTS ONE THROUGH FOUR
OF THE SUPERSEDING INDICTMENT**

Christopher Alexander Ingram, by and through counsel, respectfully moves to dismiss Counts One, Two, Three, and Four of the Superseding Indictment for failure to state an offense. Those counts charge Mr. Ingram with knowingly transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), but each fails to allege Mr. Ingram "transported" child pornography within the meaning of the statute.[1] Mr. Ingram moves to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

In support, Mr. Ingram states as follows:

**BACKGROUND**

On December 9, 2024, a federal grand jury sitting in the Newport News Division returned a five-count Superseding Indictment against Mr. Ingram. ECF No. 28. Counts One through Four charge Mr. Ingram with transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1) on four dates—December 30, 2022; February 5, 2023; February 7, 2023; and February

---

[1] Mr. Ingram's argument, as detailed below, asserts that transportation under § 2252A(a)(1) does not include the use of a personal cloud-storage account. A panel of the Fourth Circuit has rejected this argument with respect to 18 U.S.C. § 2252(a)(1). *United States v. Fall*, 955 F.3d 363, 374–75 (4th Cir. 2020) ("Transportation . . . does not require conveyance to another person."). Mr. Ingram maintains that *Fall* was wrongly decided and seeks to preserve the issue for further review.

1

18, 2023. *Id.* Count Five charges Mr. Ingram with possessing child pornography on an electronic device in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). *Id.*

The dates identified in the transportation counts align with the dates on which CyberTip Reports submitted by Synchronoss Technologies, Inc.—as reported in an affidavit in support of an application for a search warrant to search a phone seized from Mr. Ingram's vehicle—claim child pornography was "uploaded" from an account associated with a Verizon phone number used by Mr. Ingram. *See* Exh. 1 (warrant and attached documents). Synchronoss Technologies, Inc., provides remote data storage services to Verizon customers through Verizon's Cloud platform.[2]

## **ARGUMENT**

Section 2252A(a)(1) punishes any person who knowingly "transports or ships" child pornography through or in interstate commerce. Each transportation count carries a mandatory minimum sentence of 5 years' imprisonment, *see* 18 U.S.C. § 2252A(b)(1), far harsher than the penalty for simple possession of child pornography, which carries no such mandatory minimum sentence, *see id.* § 2252A(b)(2). That difference is not arbitrary. Congress saw fit to provide a harsher punishment for those who transport the prohibited material "based on its finding that 'the *exchanging through trading images* contributes to the growth of child pornography and harms increasing numbers of children.'" *United States v. Grober*, 624 F.3d 592, 616 (3d Cir. 2010) (Hardiman, J., dissenting in part) (emphasis added).

With this context, it makes sense to expect the involvement of some third party on the other end of any act of "transportation" to trigger the harsher penalty in § 2252(b)(1). Indeed, at least

---

[2] *See* Synchronoss Technologies, *Synchronoss and Verizon Sign Cloud Contract Extension through 2030* (July 19, 2023), https://synchronosstechnologiesinc.gcs-web.com/news-releases/news-release-details/synchronoss-and-verizon-sign-cloud-contract-extension-through; *see also* Verizon, *Verizon Cloud*, https://www.verizon.com/solutions-and-services/add-ons/protection-and-security/verizon-cloud/.

one circuit court of appeals has found such a requirement. The Third Circuit recently held in an unpublished opinion that transportation of child pornography did not occur when the defendant merely uploaded the images in question "to his personal Adobe Cloud account." *United States v. Chiccini*, No. 21-1036, 2022 WL 1024261, at *3 (3d Cir. Apr. 6, 2022). The account in question required "private credentials, including a password, to access the stored files." *Id.* The court distinguished cases that involved the storing of images "in shared locations that are accessible to others." *Id.* It reasoned that, in "the age of cloud computing, the typical case of possessing or receiving child pornography will involve downloading the material from the internet and uploading it to some sort of private location. But this does not necessarily mean transportation to a *shared* folder or network." *Id.* Absent some evidence that the defendant uploaded the material to a shared network or shared his cloud-storage account with another person, the court concluded his conduct was limited to receiving the material. *Id.*

Here, Counts One through Four of the Superseding Indictment fail to allege Mr. Ingram transported child pornography rather than merely possessing it. The transportation counts apparently refer to the incidents reported in CyberTip submissions from Synchronoss Technologies, Inc., between December 2022 and February 2023. Those incidents are based on alleged uploads to a Verizon cloud-storage account controlled by Mr. Ingram. But simply uploading material to a private storage space in the cloud does not elevate simple possession into transportation, any more than possessing prohibited images on one's personal computer. The internet and data storage services have evolved rapidly and continue to do so; from the end user's perspective, the use of cloud storage may be indistinguishable from local storage and just as secure and inaccessible to others. *See generally Riley v. California*, 573 U.S. 373, 397 (2014) (discussing rapid evolution of cloud computing and "the capacity of Internet-connected devices to display data

3

on remote servers rather than on the device itself"). The gravamen of the transportation offense carrying the harsher mandatory minimum sentence, meanwhile, is making contraband depictions available to others. Because Counts One through Four fail to allege that Mr. Ingram shared any contraband depictions with others, they are fatally defective and must be dismissed.

Mr. Ingram acknowledges the Fourth Circuit has squarely rejected this argument in the context of § 2252(a)(1), which uses the same language as § 2252A(a)(1). In *United States v. Fall*, 955 F.3d 363 (4th Cir. 2020), the Court held a person's uploading of child pornography from his laptop to his Dropbox account was sufficient to sustain his conviction for transportation under § 2252(a)(1). *Id.* at 374–75. However, *Fall* provided limited analysis to support its conclusion, and its reasoning is unpersuasive reasoning. Mr. Ingram maintains that it was wrongly decided.

The Court in *Fall* stated transportation "does not require conveyance to another person." *Id.* at 374. To start, Defendant Fall's argument to the contrary had been waived. *See id.* Indeed, a review of the docket below suggests it had not been raised before trial, if it was raised at all outside of a general motion for acquittal at the close of the government's case. As for the panel's reasoning, it relied primarily on *United States v. Ickes*, 393 F.3d 501 (4th Cir. 2005), which it described as affirming a transportation conviction based on the movement of contraband from Canada to Virginia without evidence of distribution to a third party. *Fall*, 955 F.3d at 374. But the issue of a third-party's involvement was not raised in *Ickes*. Neither was the sufficiency of the evidence. The only issue on appeal was the denial of a suppression motion. *Ickes*, 393 F.3d at 504–05. The *Ickes* Court noted it was "undisputed that Icke's computer and disks were being transported by his vehicle[,]" in service of applying a border-search statute that referred to "cargo" (*i.e.*, "good transported by a vessel, airplane, or vehicle"). *Id.* at 504 (quoting *Cargo*, Black's Law

4

Dictionary 226 (8th ed. 2004)).  As such, *Ickes* provides at best poor support for the rule adopted in *Fall*.

The only other basis for the *Fall* Court's conclusion were two out-of-circuit cases that held "uploading child pornography to a website constitutes transportation." *Fall*, 955 F.3d at 374.  But in both cases, the website in question was a *file-sharing* website designed to facilitate the transfer of files to other users.  *See United States v. Davis*, 859 F.3d 429, 434 (7th Cir. 2017) (affirming transportation conviction when the defendant knowingly uploaded images to "the online photo-sharing website Shutterfly[,]" which allowed individuals "to post images and then invite other Shutterfly users to view them"); *United States v. Clingman*, 521 F. App'x 386, 388 (6th Cir. 2013) ("This case arises from an investigation into child pornography on a file-sharing website, Radar.net. . . .  After a user uploaded an image, the user could share it with others by giving them a 'join code' linked to the account.").  Such websites are readily distinguishable from an individual's personal use of a private cloud-storage account.  *Fall* itself is distinguishable on this basis; it addressed a Dropbox account, which the Court described as "an online file-sharing website[.]" *Fall*, 955 F.3d at 375; *see also United States v. Rivenbark*, 748 F. App'x 948, 954 (11th Cir. 2018) ("The contents of a Dropbox account can be shared by hyperlink, which provides immediate access to anyone who clicks on it.  The Dropbox account in this case contained over 100 videos of child pornography within a folder entitled 'Share For.'").  Nothing suggests the cloud-storage account used in Mr. Ingram's case was set-up to allow anyone other than the account user to access its files.

The Second Circuit's opinion in *United States v. Clarke*, 979 F.3d 82 (2d Cir. 2020), is instructive as to the difference between transportation and possession in this context.  Like many cases charging transportation, *Clarke* involved the use of a peer-to-peer file-sharing network.  By

5

joining such a network, the user agrees to share his or her files with other users of that network. *Id.* at 87 (stating "any file a user has downloaded to his computer is automatically accessible to others on the network when the user's computer is connected to the Internet"). Here, by contrast, the Superseding Indictment fails to allege the files at issue were shared with anyone, as opposed to being found in a private storage location.

The difference between peer-to-peer or other file-sharing technologies and the technology allegedly used in this case is further highlighted by the means by which the government gained access to the material. In *Clarke* and other transportation cases, the government typically gains access to the child pornography at issue by joining the network or visiting the file-sharing website and downloading the material as an investigative step. By doing so, investigators obtain evidence that the person was making the images available to others, a necessary element of the offense. *See id.* at 86 (noting agents used uTorrent peer-to-peer network to download child pornography from the defendant's computer "and on that basis obtained a search warrant"). Here, the government did not obtain the files in question by accessing a network folder or online space shared by Mr. Ingram. Instead, they obtained the alleged contraband from the service that hosted the private storage space.

The cloud-storage service underlying Counts One through Four was not used for file-sharing. It was used only for storage. The government has not alleged the files in question were shared with anyone. "Transportation" requires more than that.[3]

---

[3] Mr. Ingram further challenges whether a person who merely *causes* an image or file to be transported, digitally or otherwise, may be guilty of transporting child pornography under § 2252A(a)(1), as opposed to some lesser crime. The statute does not appear on its face to cover such conduct. *Compare* § 2252A(a)(1) *with* 15 U.S.C. § 294 (making it unlawful "to transport *or cause to be transported*" falsely marked gold or silver ware); 16 U.S.C. § 703(a) (making it unlawful to "transport *or cause to be transported*" migratory birds); 18 U.S.C. § 842(a) (making it unlawful "to transport, ship, *cause to be transported*, or receive" explosive materials without a

## CONCLUSION

Because the Superseding Indictment fails to allege Mr. Ingram knowingly made any child pornography available to others, the transportation counts must be dismissed.

Respectfully submitted,

CHRISTOPHER ALEXANDER INGRAM

By:_____/s/_____
Suzanne V. Suher Katchmar
Virginia State Bar No. 37387
Assistant Federal Public Defender
Attorney for Christopher Alexander Ingram
500 East Main Street, Suite 500
Norfolk, Virginia 23510
Telephone:	(757) 457-0890
Facsimile:	(757) 457-0880
suzanne_katchmar@fd.org

_____/s/_____
Michael L. Tagliabue
Texas State Bar No. 24138511
Attorney for Christopher Alexander Ingram
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
757-457-0800 (telephone)
757-457-0880(telefax)
Michael_Tagliabue@fd.org

---

license or permit); 18 U.S.C. § 2314 (listing penalties for whoever "transports *or causes to be transported*" any person in the execution of a fraud); 42 U.S.C. § 6928(d) (listing penalties for anyone who "transports *or causes to be transported*" hazardous waste without a permit); 49 U.S.C. § 5108(a)(3) (limiting who may "transport *or cause to be transported*" hazardous material containers); 49 U.S.C. § 5109(a) (limiting who may "transport *or cause to be transported*" hazardous material by motor vehicle); 49 U.S.C. § 5119(b) (creating working group to standardize permits for "persons that transport, *or cause to be transported*, hazardous material by motor vehicle in the State"); 49 U.S.C. § 5123(a)(4) (addressing civil penalties for "a person that transports *or causes to be transported hazardous material*"). Causing an internet cloud-storage service to duplicate a file in a remote location is not the same as carrying a computer across state lines or creating one's own data transmission and duplication service.

7